UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SANTANDER CONSUMER USA, INC. f/k/a DRIVE FINANCIAL SERVICES, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:09-CV-2317-G |
| CAR SMART, INC. f/k/a WILLIAMS PRE-OWNED OF LIMERICK, | ) ) ) ) | **ECF** |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant Car Smart, Inc. ("Car Smart"), formerly known as Williams Pre-Owned of Limerick, to dismiss this case for lack of personal jurisdiction. For the reasons discussed below, the motion is denied.

### I. BACKGROUND

The plaintiff Santander Consumer USA, Inc. ("Santander"), formerly known as Drive Financial Services, is an Illinois corporation with its principal place of business in Dallas County, Texas. Plaintiff's Second Amended Original Petition ("Petition") ¶ 2, *attached to* Appendix in Support of Motion to Dismiss, *as* Exhibit A.

Car Smart is a Pennsylvania corporation with its registered home office in Douglassville, Pennsylvania. *Id*. ¶ 3.

On or about February 11, 2005, Santander and Car Smart entered into a Non-Recourse Dealer Retail Agreement ("the Agreement") whereby Car Smart could submit proposals to sell or assign certain automobile retail installment sales contracts to Santander. Petition ¶¶ 7, 8; Affidavit of Brandon Dry ¶ 3, *attached to* Appendix in Support of in Support of Plaintiff's Response to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. The Agreement included a Texas choice of law provision. Plaintiff's Response to Defendants' [sic] Motion to Dismiss for Lack of Personal Jurisdiction ("Response") at 7. Car Smart entered into 28 retail installment sales contracts and assigned those contracts to Santander. Petition ¶ 9. As part of the proposal process, Car Smart was to make certain representations to Santander regarding the condition and equipment options for the vehicle that was the subject of each contract. *Id*. ¶ 8. Santander contends that as to each of these 28 contracts, Car Smart misrepresented either the condition of the vehicle or an equipment option that was not in fact included with the vehicle, and that these misrepresentations violated Car Smart's warranty under the Agreement. *Id*. ¶¶ 9, 10. Thus, Santander maintains, Car Smart must either repurchase each contract or pay Santander the unpaid balance of each of the contracts. *Id*. ¶ 10.

On July 23, 2009, Santander commenced this action in the 95th Judicial District Court of Dallas County, Texas. Notice of Removal ¶ 1. On November 4, 2009, Santander filed a second amended original petition, alleging breach of contract. *Id*. ¶ 3; *see generally* Petition.

On December 4, 2009, Car Smart timely removed the case to this court on the basis of diversity of citizenship jurisdiction because Santander is a citizen of Texas, and Car Smart is a citizen of Pennsylvania. Notice of Removal ¶ 7.

On December 9, 2009, Car Smart filed this motion to dismiss this case for lack of personal jurisdiction.

## II. ANALYSIS

### A. The Factual Standard: A *Prima Facie* Case

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999). If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a *prima facie* case for personal jurisdiction. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in

favor of the plaintiff. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592. In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods. *Allred v. Moore & Peterson*, 117 F.3d 278, 281(5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998); *Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).

B. <u>The Legal Standard</u>

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that it would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm jurisdiction. *Id.* Because the Texas long-arm statute confers jurisdiction to the limits of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v. Helicopteros Nacionales de Colombia*, S.A., 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal

due process inquiry. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*, 20 F.3d at 647 n.1; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 *et seq.* (Vernon 1997) (Texas long-arm statute).

### C. Due Process Requirements

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a nonresident defendant: (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on its part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th Cir.), *cert. denied*, 498 U.S. 900 (1990). The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). However, the unilateral activity of one asserting a relationship with the

nonresident defendant does not satisfy this requirement. *Burger King*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (citing *Kulko v. California Superior Court*, 436 U.S. 84, 93-94 (1978); *Hanson*, 357 U.S. at 253). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and citations omitted). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987). General jurisdiction, on the other hand, may be found when the nonresident's contacts with

the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 415-16.

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (citations omitted). A plaintiff must establish a substantial connection between the nonresident defendant and the forum state. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment inquiry: "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular

facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982); see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).

D.  Discussion

1.  *Minimum Contacts*

Car Smart maintains that it has insufficient contacts with the State of Texas to support the exercise of general or specific jurisdiction.  Brief of Defendant, Car Smart, Inc., in Support of Motion to Dismiss for Lack of Personal Jurisdiction ("Motion") at 5.  Car Smart has never had any officers, directors, employees, or agents domiciled in Texas.  Declaration of Bruce Sanft ¶ 7, *attached to* Appendix in Support of Motion to Dismiss, *as* Exhibit B.  Furthermore, Car Smart has never (1) been licensed to do business in Texas, (2) maintained any offices in Texas, (3) designated an agent for service of process in Texas, (4) owned or leased any real property in Texas, (5) advertised in Texas, (6) paid or owned any taxes in Texas, or (7) maintained any bank accounts in Texas.  *Id*. ¶¶ 8-15.  Car Smart maintains that it never visited or traveled to Texas in connection with any agreement with Santander.  *Id*. ¶ 19.  In fact, Car Smart avers that it does not have a copy of the "alleged" Agreement, and the Agreement was not attached to Santander's second amended petition.  *Id*. ¶ 17.

According to Car Smart, "[i]f the Agreement exists, Car Smart negotiated its terms entirely from Pennsylvania and signed it in Pennsylvania." *Id*. ¶ 18.

Santander, on the other hand, contends that the court may exercise specific jurisdiction over Car Smart because Car Smart has established the requisite contacts with the state of Texas. Response at 5. Specifically, Santander maintains that Car Smart entered into the Agreement and initiated and assigned 28 contracts valued at greater than $270,000 over more than four years with Santander, a Texas resident. *Id*. at 4-6.

There is a significant connection between Car Smart and Santander's claim that permits the exercise of specific jurisdiction in this case. The sum of the defendant's contacts with the forum state, when considered both qualitatively and quantitatively, are sufficient to allow the exercise of specific jurisdiction in Texas. Car Smart purposefully entered into a continuing relationship with Santander that has lasted several years. "[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other [s]tate for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Association v. Virginia*, 339 U.S. 643, 647 (1950)). Car Smart's contacts with Texas, from which this suit arises, are not "random," "fortuitous," or "attenuated." See *Burger King*, 471 U.S. at 475. By entering into a continuing relationship with Santander, a resident of Texas, Car

Smart was purposefully availing itself of the privileges and protections of doing business in Texas. This availment should have alerted Car Smart to the possibility that it might be haled into court in Texas to answer complaints related to this extended contractual relationship. Although Car Smart argues to the contrary, the continuation of the relationship between the parties for over four years, combined with Car Smart's decision to enter into 28 agreements with Santander, suggests otherwise.

In *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.* 700 F.2d 1026 (5th Cir. 1983), *cert. denied*, 466 U.S. 962 (1984), the court found that the defendant lacked the necessary minimum contacts with Texas to support personal jurisdiction even though the defendant had sent two representatives into the state as part of the negotiation process. *Id.* at 1028-29. The facts of *Hydrokinetics*, however, are distinguishable from the instant case. *Hydrokinetics* centered on a "single, isolated transaction" that the defendant, Alaska Mechanical, was involved in. *Id.* at 1029. Apart from that transaction, Alaska Mechanical had no contact with Texas. *Id.* Also, the agreement at issue in that case was governed by Alaskan law. *Id.* No performance took place in Texas, with the possible exception of delivering money to Hydrokinetics for the purchased goods. *Id.* All of these facts distinguish *Hydrokinetics* from this case. The contacts at issue in this case go beyond a single dealing between the parties. While there is no suggestion that Car Smart had any contacts with Texas other than those

related to Santander, it is clear that Car Smart's relationship with Santander extended beyond a one-time transaction.  The parties engaged in a contractual relationship for more than four years.  Significant too is the fact that the agreements at issue here are governed by Texas law.  The agreements at issue in this case are substantially more related to Texas than the agreement in *Hydrokinetics*.  These differences are key to the exercise of specific jurisdiction.

While each of Car Smart's contacts with Texas, considered individually, might not be enough to permit the exercise of specific jurisdiction over Car Smart in Texas, those contacts, taken together, are sufficient to satisfy the minimum contacts standard.

2.  *Fair Play and Substantial Justice*

To determine whether personal jurisdiction comports with fair play and substantial justice, the court must examine a number of factors, including:  (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the interstate judicial system's interest in efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental substantive social policies. *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113 (1987).  "[O]nce minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Enviro Petroleum, Inc. v.*

*Kondur Petroleum*, 79 F.Supp.2d 720, 725 (S.D. Tex. 1999) (quoting *Burger King*, 471 U.S. at 477). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (quoting *Guardian Royal Exchange Assurance, Limited v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

Car Smart has not made a compelling case to establish that specific jurisdiction in this case would not comport with traditional notions of fair play and substantial justice. There would, in all likelihood, be some burden placed on Car Smart if it is forced to defend itself in Texas. As the court has already noted, Car Smart's principal place of business is in Pennsylvania. This burden, however, is outweighed by the interest of Texas in adjudicating this matter, particularly considering that the agreements at issue are governed by Texas law. Santander is a resident of Texas, so Texas has an interest in ensuring that its residents can seek relief here. This, combined with Santander's interest in receiving convenient and effective relief, outweighs any burden that Car Smart might face.

Because any burden placed on the defendant in this case is outweighed by the state's interest in the matter and by the plaintiff's interest in receiving convenient and effective relief, the exercise of specific jurisdiction in this case comports with

traditional notions of fair play and substantial justice. The court, therefore, concludes that the exercise of specific jurisdiction is appropriate in this case.

### III. CONCLUSION

For the reasons stated above, the defendant's motion to dismiss for lack of personal jurisdiction is **DENIED**.

**SO ORDERED**

September 20, 2010.

_____
**A. JOE FISH**
**Senior United States District Judge**